**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **IN RE:** | **CASE NO. 23-6191** |
| **MAISON ROYALE, LLC** | **C/W 23-6193** |
| **DEBTOR** | |
| | |
| **JACK ADAMS** | |
| **VERSUS** | **SECTION L (3)** |
| **RICK SUTTON** | |

**ORDER & REASONS**

Before this Court is an appeal from the Bankruptcy Court for the Middle District of Louisiana[1] brought by Appellant Jack Adams ("Appellant" or "Adams"). Adams timely filed an appellant brief. R. Doc. 14. Appellee Rick Sutton ("Appellee" or "Sutton") timely filed an appellee brief. R. Doc. 18. Adams filed a reply brief. R. Doc. 20. The Court heard oral argument from the parties on May 8, 2024. After a review of the briefing, record, and applicable law, the Court now rules as follows.

## I.     BACKGROUND

This case is an appeal from the bankruptcy court relating to the bankruptcy petition of Debtor Maison Royale, LLC ("Debtor" or "Maison Royale"). R. Doc. 1. Adams appeals the bankruptcy court's September 28, 2023 order in which that court remanded two of the three removed lawsuits to the Civil District Court for the Parish of Orleans ("CDC"). *Id.* Given the lengthy history of litigation among the parties, a brief overview of the dispute is in order.

The underlying dispute originates more than a decade ago after a failed business venture between the two parties, Sutton and Adams. In 2011, Sutton and Adams entered into a joint

---

[1] The Bankruptcy Court for the Eastern District of Louisiana referred this matter to the Middle District due to a conflict.

business venture in which they would take over a Royal Street lease owned by Sutton's father and uncle in order to sell jewelry and art from the storefront. R. Doc. 14 at 14-17. Sutton and Adams created two business entities for this purpose that they were to own 50/50: RJANO Holdings, Inc. (the entity to whom the property would be leased) and Maison Royale, LLC, the Debtor (trade name). *Id.* Sutton then formed a third entity called Maison Royale No. 2, LLC ("Maison Royale 2"), which he wholly owns, and which presently operates at the storefront selling art and jewelry. *Id.*

At the start of the venture, according to Adams, Sutton misrepresented certain facts about the lease – for example, that his father and uncle owned it when in fact the lease was month-to-month and encumbered by $50,000 in unpaid back rent. *Id.* Adams alleges that when he found out about this situation, "he indicated that he would not proceed with the proposed business venture in light of Sutton's demand that Adams pay $500,000.00 for a nonexistent lease" so instead, Adams met with the property owner to negotiate a different arrangement. *Id.* at 15. Adams says he paid the $50,000 in unpaid rent and agreed to make $500,000.00 worth of improvements on the property in exchange for the lease. *Id.* at 15-16. Sutton allegedly planned to contribute half – $250,000.00 – so that he would become a 50% owner in the Maison Royale entity, plus an additional amount so that his interest in the venture would be approximately $1 million. *Id.* at 16. Adams describes that over 2011 and 2012, he (Adams) put $1.5 million into the business and by September 2012, "it became clear that Sutton had no intention of fulfilling his base financial investment of $250,000.00 to become a potential partner in the business and certainly would not be contributing the $1 million previously discussed." *Id.* at 16-17. Thereafter, Sutton was classified as an employee instead of an owner or partner. *Id.* at 17.

In October 2014, after about two years of operating the business, their relationship soured and Sutton was terminated from his job with Maison Royale due to "poor work performance and personnel issues at the store." *Id.* Thereafter, Sutton began filing lawsuits in state court against Adams and Maison Royale, taking the position in many of these suits that he is a 50% owner in the business. Adams however contends that Sutton never made the requisite financial contributions nor did he receive "an owners' draw, a K-1, or an equity disbursement from the business at any point during its operation." *Id.* Adams alleges that twice the Louisiana Court of Appeal for the Fourth Circuit has held that Sutton has no ownership in Maison Royale. *Id.* at 14-15.

In November 2014, Sutton filed a breach of contract claim against Adams, Maison Royale, and RJANO, alleging that as an owner of Maison Royale, the defendants wrongfully terminated him and withheld salary. *Id.* at 17-18. He also brought claims on behalf of Maison Royale, as a purported owner, alleging that Adams breached his fiduciary duties. *Id.* This case was allotted to CDC Section N. *Id.* This case was removed to bankruptcy court and is one of the two cases that court remanded.

In April 2015, Sutton filed a wage payment claim against Adams and Maison Royale alleging that as an employee of Maison Royale he was owed withheld wages. *Id.* at 18. The court dismissed this case at first, citing his contradictory assertions in the breach of contract claim (owner vs. employee), the Louisiana Fourth Circuit affirmed dismissal, and the Louisiana Supreme Court vacated that dismissal and instead ordered Sutton to amend his petition, cautioning the appellate court against considering non-record facts (Sutton's other cases). *Id.* at 18-19. Sutton amended the petition, suing only Maison Royale, and this case was removed to bankruptcy court and adjudicated therein. *Id.*

Adams recounts several other state court lawsuits Sutton brought against him that were either dismissed or otherwise resolved with final rulings, such as a defamation suit and a RICO petition. *Id.* at 19-21. Some of these cases also made their way through appeals and up to the Louisiana Supreme Court. *Id.* Some were remanded by the Fourth Circuit or the Supreme Court for additional findings or for other reasons. *Id.* at 23. There are also pending petitions for annulment and malpractice by Sutton against Adams, Maison Royale, and/or Adams's counsel. *Id.* at 23-27.

In light of this stream of litigation, in April 2017 Adams filed a suit against Sutton for abuse of process, which was assigned to CDC Division L. *Id.* at 21. In December 2018, that court rendered judgment in favor of Sutton, asserting that Sutton owns a 50% interest in RJANO, which Adams appealed. The Fourth Circuit vacated that judgment on res judicata grounds and then, in March 2023, the Louisiana Supreme Court vacated the Fourth Circuit's order, concluding that res judicata did not attach in this context. *Id.* at 21-23. This case was removed to bankruptcy court and is the other of the two cases that court remanded.

On the whole, there are several cases pending across different sections of the CDC and Adams claims that following remand he moved for consolidation, which Sutton opposed. *Id.* at 23. This fact contextualizes part of this appeal because each party argues that the other's sole motivation throughout this saga has been to delay the other.

On June 20, 2023, Debtor Maison Royale filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Shortly after, Defendant Maison Royale filed a notice of removal to federal court. Subsequently, the chapter 11 petition was converted into a chapter 7 petition. Three of the pending state court matters were removed to the bankruptcy court as "related to" the petition: the breach of contract case, the wage payment case, and the abuse of process case. On September

28, 2023, the bankruptcy court remanded the breach of contract and abuse of process cases to their respective sections of the CDC but retained and has since resolved the wage payment claim. It is this order of remand that Adams now appeals.

## II.     THE APPEAL

On June 20, 2023, Adams put the Debtor into bankruptcy by filing a bankruptcy petition. R. Doc. 17-4 at 2. When Adams put the Debtor into bankruptcy, he also removed three pending state court lawsuits "on the basis that they 'relate to' the bankruptcy filing." *Id.* Adams claims that he put the Debtor into bankruptcy to streamline the various suits between the parties and the bankruptcy court found this attempt to be "legitimate." *See* Appellant Brief, R. Doc. 14 at 29 (quoting the bankruptcy court). Sutton, however, takes the position that the bankruptcy petition was filed in bad faith and ought to be thrown out, which is the subject of a separate appeal from the bankruptcy court. *See* In re Maison Royale, LLC, Case No. 23-cv-05670.

The bankruptcy court had before it three separate state court suits that were consolidated with the bankruptcy petition, which are referred to by the parties as (1) the breach of contract case, (2) the abuse of process case, and (3) the wage payment claim. *See* R. Doc. 14 at 13-14. The bankruptcy court remanded the breach of contract and abuse of process cases to the CDC, where various proceedings have since occurred. *Id.* On March 19, 2024, Sutton filed a motion to supplement the appellate record in the remand appeal on the basis that this Court ought to consider certain post-remand filings at the CDC because "they evidence that [Adams's] purported concerns about timeliness and consolidation are unfounded" and that Adams's "true aim is to derail any trial on the merits and delay this litigation as long as possible, as he has down for nearly 10 years." R.Doc. 17-4 at 3. The Court denied that motion on April 8, 2024, reasoning that it would

"inappropriate to review the bankruptcy court's order against evidence it did not have before it at the time of its decision." R. Doc. 21 at 4-5.

Adams's argument on appeal of the remand order is that it directly contradicts findings of fact the bankruptcy court issued regarding the disputes between the parties. Specifically, Adams argues that the judge found that the petition was removed for the good faith reason of consolidating various pending matters across many sections of many courts into one forum for timely adjudication. Therefore, by remanding some of these matters, Adams argues that the court abused its discretion because the remand contradicts the notion that it would be more efficient to resolve all of these matters in one forum. Adams argues that Sutton's opposition to consolidation in the CDC matters, subsequent to the remand, is just further evidence that it is Sutton who seeks delay, not Adams, and for the sake of efficiency, these matters should not have been remanded.

Sutton opposes this appeal, arguing that Adams did not have the authority to file for bankruptcy in the first place and that the district court sitting as a court of appeals does not have authority to review a remand order. R. Doc. 18. Adams responds by arguing that Sutton is incorrect on the authority issue, noting that the case law he cites deals with the appealability of *district court* orders of remand by circuit courts of appeal, and that this Court certainly has jurisdiction to review a remand order by a bankruptcy court. R. Doc. 20.

### III.   APPLICABLE LAW

#### a.   Statement of Jurisdiction

This Court has jurisdiction pursuant to 28 U.S.C. § 158(a)(1), which grants district courts the jurisdiction over appeals from "final judgments, orders, and decrees" of bankruptcy courts. 28 U.S.C. § 158(a)(1); *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 713 (1996 (finding that an order of remand constitutes a "final decision" and is thus appealable); *Scherer v. Carroll*, 150 B.R.

549, 551 (D. Vt. 1993) ("The Bankruptcy Court's Remand Order in this constitutes a final order in a non-core 'related' matter, reviewable by a district court."); *In re Ramada Inn-Paragould General Partnership*, 138 B.R. 63, 64 (E.D. Ark. 1992) ("If the bankruptcy court remands a case, an appeal to the district court is permitted under title 28.").

### b.  Standard of Review

A district court reviewing a bankruptcy court's decision "functions as a [sic] appellate court and applies the standard of review generally applied in federal court appeals." *Matter of Webb*, 954 F.2d 1102, 1103-04 (5th Cir. 1992). Findings of fact are reviewed under a clearly erroneous standard and conclusions of law are reviewed *de novo*. *Matter of Delta Towers, Ltd.*, 924 F.2d 74, 76 (5th Cir. 1991). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)). A bankruptcy court's decision to abstain or remand "will only be disturbed upon a showing of an abuse of discretion." *In re Schlotzsky's Inc.*, 351 B.R. 430, 434 (W.D. Tex. 2006) (citing *Matter of Howe*, 913 F.2d 1138, 1143 (5th Cir. 1990)). A bankruptcy court abuses its discretion when "(1) [it] applies an improper legal standard or follows an improper procedure, or (2) bases its decision on findings of fact that are clearly erroneous." *Matter of Rozelle*, 22-51125, 2023 WL 4744920, at *1 (5th Cir. July 25, 2023).

### c.  Permissive Abstention and Equitable Remand

Once a bankruptcy petition is filed in bankruptcy court, a party may remove any claim to that bankruptcy court if the court "has jurisdiction of such claim or cause of action under section 1334 of this title." 28 U.S.C. § 1452(a).  Section 1334 grants district courts "original and exclusive

jurisdiction of all cases under title 11," that is, bankruptcy cases. 28 U.S.C. § 1334(a). Pursuant to § 1334(c)(1), a district court "in the interest of justice, or in the interest of comity with State courts or respect for State law" may "abstain[] from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." This is referred to as permissive abstention. *See Doe. v. Roman Catholic Church of Archdiocese of New Orleans*, 588 F. Supp. 3d 698, 716 (E.D. La. 2022). Similarly, "[t]he court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground." 28 U.S.C. § 1452(b). This is referred to as equitable remand. *See Doe*, 588 F. Supp. 3d at 716.

The two doctrines are often analyzed under "nearly identical" governing factors and courts use case law addressing one to inform the other. *See Doe v. Archdiocese of New Orleans Indemnity, Inc.*, No. 20-1338, 2020 WL 4593443, at *3 (E.D. La. Aug. 11, 2020); *Dubose v. Merchants and Farmers Bank*, 318 F. Supp. 2d 419, 428 (S.D. Miss. 2003) ("Title 28 U.S.C. §§ 1452(b) (remand) and 1334(c) (abstention) are kindred statutes.). "The general rule is that a federal court must accept the jurisdiction granted it, and only on very rare occasions is discretionary abstention warranted." *In re Viking Offshore (USA) Inc.*, 405 B.R. 434, 440 (S.D. Tex. 2008) (citing *Colorado River Water Conservation Dist. V. United States*, 424 U.S. 800 (1976)); *Doe*, 588 F. Supp. 3d at 716 (quoting *In re Viking Offshore (USA) Inc.*, 405 B.R. at 440). However, courts have found that "[t]ogether, sections 1452(b) and 1334(c)(1) 'strongly evince a congressional policy that, absent countervailing circumstance, the trial of state law created issues and rights should be allowed to proceed in state court, at least where there is no basis for federal jurisdiction independent of § 1334 and the litigation can be timely completed in state court.'" *Union Oil Company of California v. Shaffer*, 563 B.R. 191, 201 (E.D. La. 2016) (quoting *Terral v. SCH Management Solutions, Inc.*, No. 04-1545, 2004 WL 2115486, at *3 (E.D. La. Sept. 21, 2004)).

Courts examine a number of factors when determining whether to equitably remand or permissively abstain from a case, such as

> (1) the effect or lack thereof on the efficient administration of the estate if the Court recommends [remand or] abstention; (2) extent to which state law issues predominate over bankruptcy issues; (3) difficult or unsettled nature of applicable law; (4) presence of related proceeding commenced in state court or other nonbankruptcy proceeding; (5) jurisdictional basis, if any, other than § 1334; (6) degree of relatedness or remoteness of proceeding to main bankruptcy case; (7) the substance rather than the form of an asserted core proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden of the bankruptcy court's docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; (12) the presence in the proceeding of nondebtor parties; (13) comity; and (14) the possibility of prejudice to other parties in the action.

*In re Shaffer v. Chevron, U.S.A., Inc.*, No. 15-102, 2015 WL 5991934, at *3 (Bankr. E.D. La. Oct. 14, 2015); *Broyles v. U.S. Gypsum Co.*, 266 B.R. 778, 785 (E.D. Tex. 2001).

District courts sitting as courts of appeal reviewing bankruptcy court orders to remand or abstain will examine the bankruptcy court's consideration of these equitable factors in determining whether the court abused its discretion. *Union Oil Company of California*, 563 B.R. at 201-02 (finding that "[t]he Bankruptcy Court did not abuse its discretion when it found that remand would be appropriate under Section 1452(b) given the equities discussed above" after discussing the bankruptcy court's evaluation of numerous equitable factors).

## IV.    DISCUSSION

The Court can quickly reject Sutton's contention that this Court does not have the jurisdiction to review a bankruptcy court's order of remand. The case law is well established on this matter and while circuit courts of appeal cannot generally review a federal district court's order of remand, a district court has jurisdiction to review bankruptcy courts' orders of remand. *See, e.g.*, *Scherer*, 150 B.R. at 551.

Turning to the merits, on September 28, 2023, the bankruptcy court determined that remand of two of the removed cases was proper given all the facts and evidence before it. Adams argues on appeal that the bankruptcy court remanded the breach of contract and abuse of process cases "without engaging with the standard articulated by this Court for considering motions for permissive abstention and/or equitable remand," referring to the fourteen factors articulated in *In re Shaffer v. Chevron, U.S.A., Inc*. R. Doc. 14 at 31. However, based on the record on appeal and the transcript of the oral ruling on September 28, 2023, this Court concludes that the bankruptcy court did in fact engage with this standard and reached its decision without abusing its discretion.

For example, the bankruptcy court first undertook a mandatory abstention analysis, ultimately concluding that the elements required for mandatory abstention did not apply. R. Doc. 14-1 at 17:13-20:18. The court noted the six factors that must be shown and observed that the parties "focused most, if not all, of their attention upon two of these elements, namely whether, one, the lawsuits are core or non-core in nature, and two, there can be timely adjudication in state court." *Id.* at 18:16-18:19. The court then reasoned that it need not reach the core or non-core element because it could fully address mandatory abstention by finding that the timely adjudication element is not satisfied. For mandatory abstention to apply, as all six elements must be met and thus, with the court concluding that timely adjudication in state court is not likely here, it found that mandatory abstention did not apply. *Id.* at 19:6-20:18.

Importantly, for this appeal and to the court's remand order, the bankruptcy court discussed why this element fails. It was Sutton's burden to show that the matters he sought to remand are capable of timely adjudication in state court, but the court found he did not meet this burden. Specifically, the court stated that

> [b]ased on the testimony and evidence presented, it does not appear to be a close call at all as to whether the lawsuits as currently situated can be timely adjudicated

in state court. After all, it's been almost ten years, and the Louisiana Supreme Court just nullified most of the lower court rulings made thus far. The lawsuits might not be at square one as Mr. Adams contends, but as much as Mr. Sutton may have believed his own testimony about how read the cases are for trial, this Court does not view that as remotely possible. Again, there's no clear directive on which division of CDC will even hear these matters. Accordingly, the Court finds that the timely adjudication element has not been proved by Mr. Sutton, and therefore mandatory abstention does not require remand.

*Id.* at 20:6-20:18. Thus, the bankruptcy court turned to permissive abstention under § 1334(c)(1), which gives courts the discretion to abstain. The court observed two primary reasons for "the logjam in state court:" (1) Sutton and Adams's longstanding disagreement as to who has authority to act on the debtor's behalf, and (2) that these three state court matters comprise one summary proceeding (wage payment case) and two ordinary proceedings (abuse of process and breach of contract cases). *Id.* at 21:5-21:17. The bankruptcy court concluded that the first reason is likely mooted by the fact that the debtor is in a chapter 7 liquidation and thus "it seems unlikely that this debtor will be solvent to a degree, warranting much further litigation about who owns the company." *Id.* at 21:14-21:16. In other words, because the debtor will soon have little to no assets and is in the process of being liquidated, the court reasoned that this disagreement about its ownership will not be a continuing source of state court litigation.

The second reason for the state court logjam, the different natures of the removed proceedings, led the court to conclude that remanding the ordinary proceedings made more sense from a standpoint of judicial economy. First, the court noted that the law on consolidating these three matters is unclear given their different natures. It expressed concern that consolidating these three matters, when one is a summary proceeding while the others are not, could give rise to yet more litigation among the parties as to whether consolidation in this instance is even proper. "Based on the tortured litigation history between these parties, it's no reach to imagine litigation over consolidation finding its way to the Supreme Court." *Id.* at 22:4-22:6. The court further

reasoned that "[g]iven the fact that jury trials - - that is where these ordinary proceedings are leaning, or even if they're not, but if there are jury trials, it would require withdrawal of the reference by the district court, adding delay." *Id.* at 22:8-22:12. Meanwhile, the wage payment claim "closely mirrors the claims allowance process in Bankruptcy Court, [so] the Court is not going to package the lawsuits as an all-or-nothing remand decision." *Id.* at 22:12-22:15. Accordingly, remanding all three matters at once did not seem to the bankruptcy court to be a judicially efficient path to resolution.

The bankruptcy court did however see consolidation of the two ordinary proceedings as a "much less rocky" path forward. *Id.* at 22:18. Further, the court reasoned that the fact that a chapter 7 trustee was now involved in the case could help streamline these matters once remanded. *Id.* at 22:19-22:21.

It also bears mentioning that before reaching the remand ruling, the bankruptcy court addressed a motion to dismiss, which was based largely on Sutton's allegation that the bankruptcy petition was filed by Adams in bad faith. In so discussing, the bankruptcy court noted that in March of 2023, the Louisiana Supreme Court had vacated several rulings in these suits and remanded them to the CDC for a contradictory hearing on whether consolidation was proper. *Id.* at 14:3-14:8. The bankruptcy court stated that "Mr. Sutton has opposed consolidation, at least in part, based on the argument that the wage claim suit is summary in nature and cannot be consolidated with the other two ordinary cases." *Id.* at 14:9-14:12.

Given these various considerations, this Court does not find an abuse of discretion in the order to remand the ordinary proceedings. As to the fourteen factors enumerated in *In re Shaffer v. Chevron U.S.A., Inc.*, while not explicitly ticked off one by two by fourteen, many of these factors were weighed by the bankruptcy court in its oral ruling on September 28, 2023. For

example, the first and sixth factors ("the effect or lack thereof on the efficient administration of the estate" and "degree of relatedness or remoteness of proceeding to main bankruptcy case") were considered when the court analogized the wage payment case to the claims allowance process in bankruptcy court and when the court concluded that these factors weigh in favor of not remanding that matter to state court. The third factor ("difficult or unsettled nature of applicable law") was considered when the bankruptcy court acknowledged that consolidation of these three matters is unclear based on Louisiana law given the differing natures of the proceedings, making remand of all three inappropriate because of the unlikelihood of  consolidation. The court considered the fourth factor ("presence of related proceeding commenced in state court or other nonbankruptcy proceeding") in determining that remand of the two cases was appropriate given the Louisiana Supreme Courts order to Division N to hold a contradictory hearing on consolidating these various pending state court matters. The tenth factor ("the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties") was explicitly considered when the court concluded that this was in fact *not* the case here. The eleventh factor ("the existence of a right to a jury trial") was explicitly considered and formed a great basis of the court's reasoning in not remanding all three matters given the fact that the summary proceeding would not afford a jury trial and therefore would have to proceed separately from the other two.

Last, this Court will briefly address Adams's contention that the remand order runs afoul of findings of fact, specifically that the bankruptcy court found that the petition was filed for the legitimate purpose of consolidating a quagmire of state court litigation into one federal forum, and that timely adjudication in state court on these matters had not been proven. To be clear, these findings were made in the context of the motion to dismiss, also orally decided on September 28, 2023. In any event, the order to remand is not irreconcilable with these findings. For example, the

that the bankruptcy petition was filed for the legitimate purpose of consolidating these matters does not necessarily require the bankruptcy court to hear these matters. It simply speaks to the good faith of the filing and whether the court should dismiss the *bankruptcy petition*. Further, as explained above, the court considered this when weighing the balance of the equities – the tenth factor addresses forum shopping – and the court found that the equities together weighed in favor of remand.

That these cases were not shown to be capable of timely adjudication in state court, by Sutton, as was his burden, (when urging the bankruptcy court to apply mandatory abstention principles), is also not irreconcilable with an ultimate order to equitably remand these two cases. The court acknowledged the "tortured litigation history" in state court and was aware that this saga had spanned a decade. But given the Supreme Court's order to hold a contradictory hearing on consolidation and given that these two cases *could* be consolidated without implicating a loss of jury trial rights, the court found that the equities weighed more heavily in favor of letting the state forum, intimately more familiar with the facts and procedural history among the parties, reach an ultimate resolution.

In sum, this Court cannot say that the bankruptcy court (1) "applie[d] an improper legal standard or follow[ed] an improper procedure, or (2) base[d] its decision on findings of fact that are clearly erroneous." *Matter of Rozelle*, 2023 WL 4744920, at *1. Finding no abuse of discretion, and for the foregoing reasons, the remand order of the bankruptcy court is **AFFIRMED**.


New Orleans, Louisiana, this 23rd day of May, 2024.


_____
United States District Judge